HENRY KIMMERLE v. SARAH HASS.

*Equity—Enforcement of Contract—Abandonment of rights.*

A woman was indebted upon a promissory note signed by herself and another person jointly. Her creditor began suit upon it, but she secured its payment by giving him a contract whereby he was 'to have the use of certain farm property, in which she had a life-interest, until the reasonable rents thereof should pay the debt. He however went on with his suit without the knowledge of the defendants, and took judgment. He leased the farm on shares, but his tenant finally left, selling to the woman his interest in the crops then growing. The creditor then levied execution on the property of the joint maker, but the latter obtained a decree forever staying collection. In this proceeding the woman was not made a party, and was therefore not bound by it. The creditor in answering it stated that he had abandoned all his rights, under the contract, to the woman, and that she had continued to occupy the farm, but he afterward filed a bill against her for the enforcement of the contract. *Held,* that having abandoned his rights therein, his bill would not lie.

Appeal from Cass. (A. J. Smith, J.) Feb. 7.—Apr. 16.

SPECIFIC PERFORMANCE. Defendant appeals. Reversed.

*Spafford Tryon* and *Howell & Carr* for complainant.

*Edward Bacon* for defendant.

SHERWOOD, J. In February, 1869, the husband of the defendant died, and by his will, which was duly probated, left his farm, consisting of about ninety acres (with fifty acres improved), to his wife for life, remainder to his four minor children in fee. His wife, the defendant, has, since her husband's death, always lived upon the farm with her children, and with them has ever since carried it on.

On or about the twenty-second day of August, 1873, the defendant borrowed two hundred dollars of complainant and gave him her note for the same at ten per cent., signed by her brother, A. F. Shattuck, as surety. After the giving

of this note, and in 1877, Mrs. Hass made a verbal arrange-. ment with her sons to surrender her life estate to them upon the condition that they should care for, maintain and support her so long as she lived, and thenceforward they had control of the property and managed it under that agreement, except as the use of the same was given over to complainant as hereinafter stated. After the note became due, and in April, 1879, complainant brought suit upon the same against the makers, in the Cass circuit; and pending this suit the following arrangement was entered into by the parties (Shattuck consenting thereto.)

"This agreement witnesseth that I, Sarah J. Hass, of the township of Howard, in Cass county, Michigan, being justly indebted to Henry Kimmerle, of Lagrange, in said county, in the sum of two hundred dollars, and interest thereon at, ten per cent., from August 22, 1873, upon a note of that date, signed by me and by Alonzo F. Shattuck, have, for the purpose of paying the same and costs in a suit commenced for the recovery of same, do hereby rent and to farm let to said Kimmerle all the land in said Howard township in which I have a right, the same being about ninety-two acres in the north half of section four, formerly owned by Squire Hass, to have, hold, use and enjoy the same until the reasonable rents thereof shall pay said debt, with said interest accruing and to accrue, and said costs.

*Dated April* 21, 1879.        Sarah J. Hass.    [Seal.]
Witnesses : D. W. Hurd, R. Cook."

This contract was made without the knowledge of the children, and it was not approved by them after they became aware of its existence. The defendant and Shattuck claim that the arrangement was to effect a discontinuance of the suit upon the note, as well as to secure its payment, and that this was so expressed at the time the agreement was made. The complainant, however, took judgment upon his note, without the knowledge of either of the makers, at the June term in 1879. The complainant took possession of the farm under the agreement, except that portion of the house in which defendant lived, and rented it to one Abbott, who worked it upon shares for complainant until the spring of

1882, when, having some difficulty, he left the premises, and defendant purchased his interest in the crops then growing upon the farm, and she and the children have, since the first of September, 1882, excluded the complainant, and have used and occupied the property, claiming that complainant, in August, abandoned the use of the premises to the defendant, and that he had then had it a sufficient length of time, if properly used, to satisfy the note.

On the thirtieth day of August the complainant caused execution to be issued on the judgment, and levied upon the property of Shattuck, which was taken thereon; and thereupon, on the first day of September, Shattuck filed his bill of complaint in the circuit court to be relieved from the payment of said judgment, and a decree was finally entered in said cause, May 18, 1882, perpetually staying the judgment against Shattuck. After the complainant had thus obtained his judgment against the defendant, and Shattuck had obtained a decree in substance that he was no longer liable, complainant again sought to regain the possession and use of the farm under the contract of April 21, 1879, to satisfy the judgment, which he claimed was wholly unpaid.

The defendant and her children forbade his doing this, and when he made the attempt to enter and use the premises he was successfully resisted by defendant and her children. Thereupon he filed his bill in this case and asks the circuit court of Cass county, in chancery, to place him in possession of the farm, or some other person, and compel the defendant to carry out the contract of April 21st, until the payment of his judgment, damages, interest and costs, was made. On the eighth day of March the circuit judge entered a decree declaring the contract of April 21st in full force, and giving the complainant possession, turning the defendant out of her house, and enjoining her and the children from interfering with complainant's movements in the premises. From this decree the defendant appeals to this Court.

It is difficult to see how the complainant's suit can be sustained upon this record. By the decree in the first suit it

must be conceded Shattuck was entirely relieved from pay-
ing the note or judgment; and it is further apparent that
the defendant, not being a party to that suit or the proceed-
ings taken therein, cannot be bound by the decree, or any
clause thereof made therein.    There seems to be no question
but that the contract entered into April 21, 1879, though very
indefinite and imperfect in many things, was intended when
made to give to the complainant the use of the farm until
the rents and profits or use thereof should be sufficient to
satisfy the claim of complainant.

The defendant claims and testifies that the use of the garden
and house was reserved by her when she made the arrange-
ment with Mr. Kimmerle, and that she did not understand
that the writing excluded her therefrom.   The circumstances,
we think, rather corroborate this view than otherwise; still,
that is not very material, in our view of the case.

The complainant concedes by his testimony that he took
possession by his tenant of the property, though he claims
he never realized anything from his occupation, but the evi-
dence tends strongly to show that if such were the fact it was
not the fault of defendant.   The evidence tended to show
that the complainant went into the occupancy of the premises
by his tenant, Mr. Abbott (who was on the farm when the
contract was made), in 1880, and controlled the property
until the first of August, 1882,—about two years and six
months.   It is true, there was some interference with the
tenant and men of complainant on account of the manner in
which they used the farm, and, as the evidence tends to show,
not without some cause, from the carelessness and neglect of
the tenant; but nothing, apparently, which would not have
been obviated by a proper and farmer-like use of the premises.

On the thirtieth day of August, 1882, the complainant
went to the farm of the defendant, where she lived, and then
told her, as she testifies, that he would not have anything
more to do with the farm or her, and told Shattuck the same,
and that he should collect his judgment; and he says, in his
answer to the suit against him by Shattuck, he " abandoned
it, * * * and, upon the continued failure of the said

Sarah J. Hass to surrender possession of said house, and also upon the failure of said contract to produce anything to apply upon said judgment, this defendant surrendered his possession and right under said contract to said Sarah J. Hass, who had, in fact, never parted with the possession of said premises; * * * that upon his abandonment of all his rights under said contract, for the reasons stated, said Sarah J. Hass continued to occupy said premises, and your orator took out execution on said judgment." Here is a complete surrender and abandonment of the premises under the contract to the defendant, and an acceptance of the same by her, shown by the complainant's own statement. It is quite unnecessary to consider the other testimony upon the subject.

It is entirely unimportant, so far as this case is concerned, whether the complainant ever received anything upon the contract for the use of the farm or not; if the abandonment was complete, his interests therein and right to enforce them were gone. What his rights are upon his judgment, or to what extent it may be satisfied, or in what manner, are not questions now before us.

It sufficiently appears that, at the time the complainant commenced this suit, he had no equitable rights left to enforce under the contract of April 21, 1879; and, as no others are relied on, the decree must be

Reversed and bill dismissed, with costs.

The other Justices concurred.